1   EDMUND G. BROWN JR.
    Attorney General of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   PAMELA C. HAMANAKA
    Senior Assistant Attorney General
4   SARA J. FARHAT
    Deputy Attorney General
5   DAVID ZARMI
    Deputy Attorney General
6   State Bar No. 245636
     300 South Spring Street, Suite 1702
7    Los Angeles, CA  90013
     Telephone:  (213) 576-1336
8    Fax:  (213) 897-6496
     E-mail:  DocketingLAAWT@doj.ca.gov
9   *Attorneys for Respondent*

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15   **RAMON CAMACHO,**                    CV 09-05527 RSWL(RZ)

16                          Petitioner,   **ANSWER TO PETITION FOR
                                          WRIT OF HABEAS CORPUS;**
17          **v.**                        **MEMORANDUM OF POINTS AND
                                          AUTHORITIES**
18   **DELA ROSA, Director,**

19                          Respondent.

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3   Memorandum of Points and Authorities ........................................................3

4   Procedural History .......................................................................................... 3

    Statement of Facts............................................................................................4

5   Petitioner's Contention ................................................................................... 6

6   Argument ......................................................................................................... 6

7        I.      Standard of Review ...................................................................... 6

8        II.     The California courts reasonably found that Petitioner's
                 conviction did not violate Double Jeopardy or Due Process................ 9

9                A.      Factual background ................................................... 10

                 B.      Applicable law ......................................................... 10

10               C.      The California courts reasonably found that the jury's true
                         intent was to convict Petitioner of robbery in Count 2 and
11                       that the carjacking form was merely a clerical error ................ 11

12   Conclusion ................................................................................................... 16

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Bell v. Cone*
  535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ................................. 6, 7

*Bell v. Cone*
  543 U.S. 447, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (per curiam) ..................................... 8

*Carey v. Musladin*
  549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006) .......................................... 7

*Clark v. Murphy*
  331 F.3d 1062 (9th Cir. 2003)................................................................ 6, 7

*Cole v. Arkansas*
  333 U.S. 196, 68 S.Ct. 514, 92 L. Ed. 644 (1948) ................................................... 11

*Early v. Packer*
  537 U.S. 3, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ................................................ 7, 8

*Hernandez v. Small*
  282 F.3d 1132 (9th Cir. 2002).............................................................. 7

*Holland v. Jackson*
  542 U.S. 649, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam) .................................. 9

*Hunter v. Aispuro*
  982 F.2d 344 (9th Cir. 1992).............................................................. 9

*Lacy v. Lewis*
  123 F. Supp. 2d 533 (C.D. Cal. 2000) ..................................................... 9

*Lambert v. Blodgett*
  393 F.3d 943 (9th Cir. 2004)........................................................... 7, 8, 13

*Lockyer v. Andrade*
  538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) ........................................... 7

*Miller-El v. Dretke*
  545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) ......................................... 9

*Ohio v. Johnson*
  467 U.S. 493, 104 S. Ct. 2536................................................................ 11

1

# TABLE OF AUTHORITIES
## (continued)

2

Page

3

*People v. Camacho*
   171 Cal. App. 4th 1269, 90 Cal. Rptr. 3d 559 (2009) ........................................................... 3

4

*Price v. Vincent*
   538 U.S. 634, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003) ..................................... 6

5

6

*Rice v. Collins*
   546 U.S. 333, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) ........................................ 8

7

8

*Taylor v. Maddox*
   366 F.3d 992 (9th Cir. 2004) ..................................................................... 8, 13

9

*Teague v. Lane*
   489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) ................................... 1

10

11

*United States v. Howard*
   278 Fed. Appx. 777 (9th Cir. 2008) ............................................... 11, 13, 14, 15

12

13

*United States v. Stauffer*
   922 F.2d 508 (9th Cir. 1990) ......................................................... 11, 13, 14, 15

14

*Virgin Islands v. Bedford*
   671 F.2d 758 (3d Cir. 1982) ........................................................... 11, 13, 14, 15

15

16

*Williams v. Taylor*
   529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) ................................. 6, 7

17

18

*Woodford v. Visciotti*
   537 U.S. 19, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) ......................................... 6

19

*Wright v. Van Patten*
   128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ............................................................ 7

20

21

*Ylst v. Nunnemaker*
   501 U.S. 797, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) ..................................... 9

22

23

STATUTES

24

28 U.S.C. § 2254 ................................................................................................ passim

25

Cal. Penal Code
   § 211 ................................................................................................................... 3, 10

26

   § 215 ........................................................................................................................... 3

27

   § 654 ........................................................................................................................... 3
   § 12022 ....................................................................................................................... 3

28

(Test Case Number)

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

CONSTITUTIONAL PROVISIONS

4

Fifth Amendment ................................................................................................ 11

5

Fourteenth Amendment ...................................................................................... 11

6

COURT RULES

7

Fed. R. App. P. 32.1(a) ...................................................................................... 11

8

Fed. R. Crim. P. 36............................................................................................ 11, 14

9

Fed. Rule of Civil Procedure 25......................................................................... 1

10

Ninth Circuit Rule 36-3(b).................................................................................. 11

11

OTHER AUTHORITIES

12

CALCRIM No.
      1600................................................................................................................ 13
      1650................................................................................................................ 13

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Test Case Number)

1    Respondent, Melissa Lea, Chief Deputy Warden of the California out of State
2    Correctional Facility Unit,[1] hereby files this Answer to the Petition for Writ of
3    Habeas Corpus, and admits, alleges, and denies the following:

4        1.    Petitioner is properly in the custody of the California Department of
5    Corrections and Rehabilitation pursuant to a valid judgment and felony conviction
6    in Los Angeles County Superior Court case number YA067055, pursuant to which
7    Petitioner is serving a state prison term of eleven years eight months.

8        2.    Ground One alleged herein should be denied and dismissed with
9    prejudice because the California courts' denial of relief on this claim was neither
10   contrary to, nor an unreasonable application of, clearly established United States
11   Supreme Court precedent; nor was the denial of relief based upon an unreasonable
12   determination of the facts presented in the state court proceedings.  *See* 28 U.S.C. §
13   2254(d).

14       3.    The Petition appears to be timely.

15       4.    The claim in the Petition appears to be exhausted.

16       5.    The claim in the Petition does not appear to be procedurally barred.

17       6.    The claim in the Petition does not appear to be barred by the non-
18   retroactivity doctrine set forth in *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct.
19   1060, 103 L. Ed. 2d 334 (1989).

20       7.    Petitioner is not entitled to an evidentiary hearing under 28 U.S.C. §
21   2254(e).

22

23
_____
24      [1]   It appears that Petitioner is currently incarcerated at Tallhatchie County Correction
     Facility in Tutwiler, Mississippi, a private correctional facility outside of California.  At the time
25   the Petition was filed, Petitioner was incarcerated at La Palma Correctional Facility in Eloy,
     Arizona, and he named then-warden Charles Derosa as the respondent.  The California
26   Department of Corrections and Rehabilitation has contracted with the Correctional Corporation of
     America to house California inmates in out-of-state private correctional facilities to temporarily
27   alleviate overcrowding within existing institutions. Melissa Lea is the current Chief Deputy
     Warden of the California Out of State Correctional Facility Unit.  Substitution of the proper
28   custodian's name is authorized under Federal Rule of Civil Procedure 25(d)(1).

1

8.     Respondent denies each and every allegation of the Petition and specifically denies that Petitioner's custody is in any way improper, that the judgment underlying Petitioner's custody is in any way improper, and that his federal constitutional rights are being violated in any way.

9.     This Answer is based on the attached Memorandum of Points and Authorities, this Court's file, and the records and files in this case, including the clerk's transcript (CT) and reporter's transcript (RT) prepared in connection with Petitioner's direct appeal, copies of which are being lodged concurrently herewith, and on such other matters as are properly submitted to the Court.

WHEREFORE, Respondent prays that the Petition for Writ of Habeas Corpus be denied.

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## PROCEDURAL HISTORY

In an information filed by the Los Angeles County District Attorney on February 27, 2007, in Los Angeles County Superior Court case number YA067055, Petitioner was charged in Counts 1 and 3 with carjacking (Cal. Penal Code § 215(a)), and Counts 2 and 4 with second degree robbery (Cal. Penal Code § 211). The information further alleged as to all counts that Petitioner used a deadly weapon in their commission.  Cal. Penal Code § 12022(b)(1).  Following a jury trial, Petitioner was found guilty as charged on January 29, 2008.[2]  The jury also found the special allegations to be true as to Counts 3 and 4.  The trial court dismissed the special allegations as to Counts 1 and 2.  On March 14, 2008, probation was denied and Petitioner was sentenced to eleven years eight months in state prison consisting of the upper term of nine years for Count 1, plus one-third of the mid term for Count 3 of one year eight months, and a deadly weapon enhancement of one year.  The court imposed and stayed the low terms of two years each for Counts 2 and 4 pursuant to California Penal Code section 654.  (CT 66-69, 158-61, 164-65, 192-96; 5RT 2102-03.)

On March 10, 2009, the judgment was affirmed in a published opinion issued by the California Court of Appeal (case no. B207048).  (LD 6.)[3]  On April 10, 2009, Petitioner filed a petition for review in the California Supreme Court (case no. S171982), which was summarily denied on June 10, 2009.  (LD 7, 8.)

The Petition in the instant case was filed on July 28, 2009.

---

[2] As discussed *infra*, the jury was erroneously given two carjacking verdict forms for Counts 1 and 2, instead of one for carjacking and one for robbery.  (CT 160-61.)  However, the jury still found Petitioner guilty of Count 2, "as charged."  (CT 160.)

[3] *People v. Camacho*, 171 Cal. App. 4th 1269, 90 Cal. Rptr. 3d 559 (2009).

3

1

2                          **STATEMENT OF FACTS**

3        On January 1, 2007, at about 4:20 p.m., Trechell Patton and her sister, Shantel

4   Morris, drove a gold Toyota Camry Avis rental car to a gas station on Western

5   Avenue in Los Angeles and parked.  (3RT 1245-48; 4RT 1515-16.)  Morris got out

6   of the car and went into the station's convenience store as Petitioner came out.

7   (3RT 1248; 4RT 1517, 1521-22.)  Patton remained in the car with the key in the

8   ignition and the windows up.  (3RT 1248.)

9        Patton saw three Hispanic men, including Petitioner, sitting on the curb behind

10  the car.  (3RT 1248-49, 1251.)  Petitioner walked up to the passenger-side window,

11  and Patton lowered it.  Petitioner stuck his hand through the open window and

12  Patton asked him what he was doing.  (3RT 1251-52.)  In response, Petitioner

13  removed his hand, and walked around the rear of the car to the driver's side.

14  Petitioner opened the door and showed Patton a knife.  (3RT 1252.)  When Patton

15  saw the knife she felt scared.  (3RT 1253.)

16       As Petitioner sat down, Patton took the car key out of the ignition, and got out

17  of the car.  (3RT 1253-54.)  Petitioner also got out of the car and started to walk

18  back around the rear again.  Patton thought Petitioner was coming back toward her,

19  so she closed her door, threw the key onto the roof of the car, and told him to "take

20  it."  (3RT 1254, 1256.)  Patton was afraid and decided it was better "for him to take

21  the car than [her] life."  (3RT 1255-56.)  Petitioner took the key off of the roof, and

22  Patton ran into the store to tell Morris that the car was being stolen.  (3RT 1255-57;

23  4RT 1518-19.)

24       Morris ran out of the store with Patton.  (3RT 1257; 4RT 1519-20.)  One of

25  the men was trying to get into the back seat of the car, but was impeded by a child's

26  car seat.  (3RT 1260.)  The third man was sitting in the passenger seat and

27  Petitioner was sitting in the driver's seat.  (3RT 1259-60.)  Morris opened up the

28  driver-side car door and pulled on Petitioner's shirt.  (3RT 1257-58; 4RT 1521.)

                                           4

Petitioner hit Morris with his elbow to get her off of him.  (3RT 1258-59; 4RT 1522.)  Patton told Morris, "Let him go because he got a knife," and Morris let go.  (3RT 1258-59; 4RT 1523.)

The three men drove off in the Camry, and Ms. Patton called 911.  (3RT 1261; 4RT 1524.)  Patton had a CD case and a bag in the car, and Morris had a child seat and a purse.  (3RT 1274-75; 4RT 1526.)  The police arrived at the gas station in less than ten minutes, and within another ten minutes, the car had been found in Gardena.  (3RT 1276-77; 4RT 1566-67.)

Gardena Police Officer Rodney Gonsalves received a report of the carjacking and found the car on the 110 freeway with three Hispanic men inside.  (4RT 1807-08, 1810-11.)  Officer Gonsalves tried to get behind the Camry, but the driver slowed down to thirty miles per hour to try to block him.  (4RT 1811-12.)  Officer Gonsalves brought his car down to twenty miles per hour and got behind the Camry to verify the license plate number.  (4RT 1812-13.)  Officer Gonsalves turned on his lights and followed the car off the freeway, where it stopped.  (4RT 1814.)  Officer Gonsalves radioed for backup and held the carjackers at gunpoint.  (4RT 1567-68, 1814-15.)  Officer Roberto Rosales arrived at about 4:24 p.m. and found Petitioner in the driver's seat.  (4RT 1567-68.)  Officer Rosales handcuffed Petitioner and asked him if he had any weapons.  (4RT 1571-72.)  Officer Rosales had been told that Petitioner had used a knife in the carjacking.  Petitioner responded, "I left it in the car, in (sic) the . . . driver's floorboard."  (4RT 1572.)  Officer Michael Hassoldt found the knife in the car, along with Ms. Morris's purse.  (4RT 1848, 1853.)

Patton and Morris were taken to where the car was found and asked to identify Petitioner.  (3RT 1277; 4RT 1529-30.)  They both identified Petitioner out of the three men who were found in the Camry.  (3RT 1278-80; 4RT 1532.)  All of the sisters' property was still in the car, along with a beer can left by the carjackers.  (3RT 1278; 4RT 1526-27.)

5

1

2                    **PETITIONER'S CONTENTION**

3          Petitioner's constitutional right to due process and protection from double

4   jeopardy was violated when he was convicted twice for the same carjacking

5   offense.  (Pet. at 5; Pet. Attached Pages ("Attached Pages") at 1-3.)

6                              **ARGUMENT**

7   **I.    STANDARD OF REVIEW**

8          The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

9   became effective on April 24, 1996.  When a state court adjudicates a claim on the

10  merits, the AEDPA bars federal habeas corpus relief on that claim unless the state-

11  court adjudication was either (1) "contrary to, or involved an unreasonable

12  application of, clearly established Federal law, as determined by the Supreme Court

13  of the United States," or (2) "based on an unreasonable determination of the facts in

14  light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);

15  *Price v. Vincent*, 538 U.S. 634, 638-39, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003).

16  This is a "'highly deferential standard for evaluating state-court rulings' which

17  demands that state-court decisions be given the benefit of the doubt."  *Woodford v.*

18  *Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (quoting *Lindh*

19  *v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997)).

20         A state court decision is "contrary to" federal law if it either "applies a rule

21  that contradicts the governing law" as set forth in Supreme Court opinions, or

22  reaches a different decision from a Supreme Court opinion when confronted with

23  materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.

24  Ct. 1495, 146 L. Ed. 2d 389 (2000); *accord Bell v. Cone*, 535 U.S. 685, 694, 122 S.

25  Ct. 1843, 152 L. Ed. 2d 914 (2002) (*Bell I*); *Clark v. Murphy*, 331 F.3d 1062, 1067

26  (9th Cir. 2003).  A state court makes an "unreasonable application" of federal law if

27  the state court identifies the correct governing legal principle from the Supreme

28  Court's decisions but unreasonably applies that principle to the facts of the

                                       6

prisoner's case. *Williams*, 529 U.S. at 413; *Bell I*, 535 U.S. at 694; *accord Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) ("AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law").

It is not enough merely to show that the state court was incorrect.  Federal habeas corpus relief is not available simply because a federal court independently concludes "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Lockyer*, 538 U.S. at 75-76; *Early v. Packer*, 537 U.S. 3, 11, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002); *Bell I*, 535 U.S. at 694; *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004) ("we may not review state court judgments on the same terms as we do for direct appeals").

If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. *See Wright v. Van Patten*, 128 S. Ct. 743, 747, 169 L. Ed. 2d 583 (2008); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006).   Decisions of the Supreme Court are the only ones that can form the basis justifying habeas relief; lower federal courts cannot themselves establish such a principle to satisfy the AEDPA bar. *Clark v. Murphy*, 331 F.3d at 1069; *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) (any principle on which a petitioner seeks to rely must be found in the holdings, as opposed to dicta, of the Supreme Court decisions).  Under the AEDPA, "clearly established federal law" is the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer*, 538 U.S. at 71; *see also Williams*, 529 U.S. at 412.

7

1    A state court's failure to cite any federal law in its opinion does not run afoul
2    of the AEDPA.  In fact, a state court need not even be aware of applicable Supreme
3    Court precedents "so long as neither the reasoning nor the result of the state-court
4    decision contradicts them."  *Early*, 537 U.S. at 8; *Bell v. Cone*, 543 U.S. 447, 455,
5    125 S. Ct. 847, 160 L. Ed. 2d 881 (2005) (per curiam) (*Bell II*) (federal courts are
6    not free to presume that a state court did not comply with constitutional dictates on
7    the basis of nothing more than a lack of citation; federal courts must presume that
8    the state court applied the same constitutionally sufficient review it used in earlier
9    cases absent some contrary indication).

10    In addition, under § 2254(d)(2), a state court's findings of fact are binding in
11    federal court unless the federal court determines that the state court's factual
12    findings were unreasonable in light of the evidence presented in state court.  *Taylor*
13    *v. Maddox*, 366 F.3d 992, 1000-01 (9th Cir. 2004) (federal court first undertakes
14    "intrinsic review" of state court's fact-finding under § 2254(d)(2); during this
15    process, the federal court "must be particularly deferential"); *Lambert*, 393 F.3d at
16    972 (§ 2254(d)(2) applies to challenges based on state court record).  The burden a
17    petitioner faces in attempting to show an unreasonable determination of the facts
18    based on the evidence presented is "daunting -- one that will be satisfied in few
19    cases."  *Taylor*, 366 F.3d at 1000; *see also Rice v. Collins*, 546 U.S. 333, 336-42,
20    126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (federal court misapplied settled rules that
21    limit its role and authority by setting aside reasonable state-court determinations of
22    fact in favor of its own debatable interpretation of the record).

23    The state court's factual findings are also entitled to a "presumption of
24    correctness" and are controlling unless the petitioner rebuts the presumption by
25    clear and convincing extrinsic evidence.[4]  *See* § 2254(e)(1); *Lambert*, 393 F.3d at

26    ────────────────
      [4] Rarely, if ever, may a federal court permissibly consider extrinsic evidence to find that a
27    petitioner has rebutted the correctness of the state court's factual findings, already determined by
      the federal court to have been reasonable, by clear and convincing evidence.  The Supreme Court
28    has "made it clear that whether a state court's decision is unreasonable must be assessed in light
                                                                                    (continued…)

                                            8

1    973 ("the only evidence eligible to meet the 'clear and convincing' burden is new

2    evidence presented exclusively in federal court"); *see also Miller-El v. Dretke*, 545

3    U.S. 231, 240, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005).

4        Here, the California Court of Appeal affirmed Petitioner's conviction in its

5    entirety.  The court rejected Petitioner's current claim on its merits.  The California

6    Supreme Court reached the merits of Petitioner's claim when it denied his petition

7    for review without citation to authority or a written opinion.  *Hunter v. Aispuro*,

8    982 F.2d 344, 348 (9th Cir. 1992).  However, "where there has been one reasoned

9    state judgment rejecting a federal claim, later unexplained orders upholding that

10   judgment or rejecting the same claim rest upon the same ground."  *Ylst v.*

11   *Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Lacy*

12   *v. Lewis*, 123 F. Supp. 2d 533, 539-40 (C.D. Cal. 2000).  As set forth below, the

13   AEDPA precludes relief in this case.

14   **II.   THE CALIFORNIA COURTS REASONABLY FOUND THAT**
         **PETITIONER'S CONVICTION DID NOT VIOLATE DOUBLE**
15       **JEOPARDY OR DUE PROCESS**

16       Although Petitioner was charged in Count 2 with second degree robbery (*see,*

17   *e.g.*, CT 67), due to clerical error the jury was given a carjacking verdict form,

18   which was read into the record (CT 160; *see* 5RT 2408; *but see* CT 165).  Petitioner

19   contends that treating the Count 2 verdict as a conviction for carjacking would

20   violate the constitutional provision against double jeopardy, as well as his due

21   process rights.[5]  (Pet. at 5; Attached Pages at 1-2.)  However, the California Court

22   _____

23   (…continued)
     of the record the court had before it."  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736,
     159 L. Ed. 2d 683 (2004) (per curiam) (citing *Yarborough v. Gentry*, 540 U.S. 1, 124 S. Ct. 1,
24   157 L. Ed. 2d 1 (2003) (per curiam), *Miller-El v. Cockrell*, 537 U.S. 322, 348, 123 S. Ct. 1029,
     154 L. Ed. 2d 931 (2003), and *Bell I*, 535 U.S. at 697 n.4 (declining to consider evidence not
25   presented to state court in determining whether its decision was contrary to federal law)).
         [5] Although Petitioner does not elaborate on how his due process rights were violated in the
26   Petition, in his direct appeal and petition for review the California Supreme Court, Petitioner's
     then-counsel argued that the third carjacking conviction was a violation of his due process right
27   not to be convicted of an uncharged crime.  Respondent will assume Petitioner makes the same
     argument for the purpose of the Answer.  (LD 3 at 7-8; LD 7 at 6-7.)

28

9

of Appeal reasonably found that "the jury's unmistakable intent was to convict [Petitioner] of robbery, as charged in [C]ount 2, and the clerical error in the verdict form was surplusage that may be disregarded." (LD 6 at 3.) Therefore, Petitioner was not convicted of two counts of carjacking and his conviction violated neither double jeopardy nor due process. (LD 6 at 7.)

## A.   Factual Background

In the information filed on February 27, 2007, Petitioner was charged with two counts of carjacking and two counts of second degree robbery, one count for each of the two victims, Morris and Patton (Counts 1 and 2 for Morris and Counts 3 and 4 for Patton). (CT 66-68.) On January 25, 2008, after the close of evidence, the trial court instructed the jury that Petitioner was "charged in Counts 2 and 4 with robbery in violation of Penal Code section 211." (5RT 1906; CT 143.) On January 28, 2008, the parties reviewed the verdict forms with the court. (5RT 2101.) On Petitioner's motion, the court promised to modify the verdict forms for Counts 1 and 2 to remove the deadly weapon enhancement allegations. (5RT 2103, 2105.) In closing argument that same day, both the prosecutor and defense counsel told the jury that Petitioner was charged twice for robbery and twice for carjacking, once for each victim. (5RT 2127.) The jury began deliberations, and reached a verdict on January 29, 2008. (CT 157, 162-63; 5RT 2406-07.)

The jury filled out four verdict forms, finding Petitioner guilty as charged in Counts 1, 3, and 4, for carjacking, carjacking, and robbery, respectively. The jury also filled out a form that purported to find Petitioner guilty "as charged in Count 2" for carjacking. (CT 158-61.) The jury foreperson read the same into the record, as recorded in the reporter's transcript. (5RT 2408; *but see* CT 164-65 [court's minute order stating that the jury said that it found Petitioner guilty of second degree robbery "as charged in [C]ount 2"].) The final abstract of judgment recorded that Petitioner was found guilty of two counts of robbery and two counts of carjacking. (CT 195.)

1

2 **B. Applicable Law**

3    The Double Jeopardy Clause of the Fifth Amendment protects against multiple

4 punishments for the same offense.  *Ohio v. Johnson*, 467 U.S. 493, 497-98, 104 S.

5 Ct. 2536; 81 L. Ed. 2d 425 (1984).  The Due Process Clause of the Fourteenth

6 Amendment requires that a defendant be given "notice of the specific charge

7 [against him], and a chance to be heard in a trial of the issues raised by that charge."

8 *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L. Ed. 644 (1948).

9    However, a trial court's correction of a verdict form to reflect a jury's true

10 intent does not alter that jury's verdict, presents "no possible unfairness," and

11 cannot support a double jeopardy violation.  *United States v. Stauffer*, 922 F.2d 508,

12 514 (9th Cir. 1990); *see also United States v. Howard*, 278 Fed. Appx. 777, 778

13 (9th Cir. 2008) (applying *Stauffer* where the trial court changed the verdict form to

14 convict the defendant of a different crime, reflecting the jury's true intent);[6] *Virgin*

15 *Islands v. Bedford*, 671 F.2d 758, 762-64 (3d Cir. 1982) (cited by *Howard*, holding

16 that a court's correction of clerical error on jury verdict forms is not a violation of

17 due process where the information charged the defendant correctly).  This rule is

18 enshrined in the Federal Rules of Criminal Procedure: "Clerical mistakes in

19 judgments, orders or other parts of the record and errors in the record arising from

20 oversight or omission may be corrected by the court at any time and after such

21 notice, if any, as the court orders."  Fed. R. Crim. P. 36.

22 **C. The California Courts Reasonably Found That the Jury's True**
   **Intent Was to Convict Petitioner of Robbery in Count 2 and**
23    **That the Carjacking Form Was Merely a Clerical Error**

24    Petitioner argues that the jury's guilty verdict for carjacking in Count 2 was

25 intentional, and that if the jurors had wanted to convict him of robbery instead of

26 carjacking, they would have asked for a different verdict form.  (Attached Pages at

27    [6] This disposition was unpublished, but is citable as it was issued after January 1, 2007.
   *See* Fed. R. App. P. 32.1(a); Ninth Circuit Rule 36-3(b).
28

11

1.)  As such, the conviction must be treated as a carjacking conviction, in violation
of double jeopardy and due process.  (Attached Pages at 1-2.)  However, the
entirety of the record and the evidence compels the conclusion that the jury
intended to find Petitioner guilty of second degree robbery in Count 2, "as
charged."  (CT 160.)  The information clearly charged Petitioner with second
degree robbery in Count 2, and from the beginning of the trial the jury was told that
Petitioner was charged with two counts of carjacking and two counts of robbery.
(CT 66-68; *see*, *e.g.*, 3RT 1230 [prosecutor's opening statement].)  The court made
this explicit in its instructions after the evidence was presented, right before jury
deliberations.  (5RT 1906; CT 143.)  Defense counsel himself reminded the jury of
the same in his closing argument.  (5RT 2127.)

      As Petitioner recognizes, it was only due to a clerical error that apparently
occurred when the court amended the verdict forms for Counts 1 and 2 at
Petitioner's request that two carjacking forms were produced, instead of one for
carjacking and one for robbery.  (*See* 5RT 2101, 2103, 2105; CT 158-161; Attached
Pages at 1 ["it is probable that it was unintentional"].)  The jury merely used the
verdict form it was given, which was then read, verbatim, in court.  (CT 160; 5RT
2408; *but see* CT 165 [where court's minute order quotes the jury as convicting
Petitioner of second degree robbery].)  As stated above, both parties and the court
treated the jury's verdict as a conviction for robbery.  (CT 169 [prosecutor's
sentencing memorandum], 178 [Petitioner's sentencing memorandum], 195
[abstract of judgment]; 5RT 2702 [court states for sentencing purposes that
Petitioner was convicted of robbery and neither Petitioner nor defense counsel
object].)  Petitioner is merely looking for a windfall from a clerical error.

      The jury's verdict in not susceptible to a different construction than guilty of
robbery.  Robbery is what Petitioner was charged with in Count 2, and it made no
sense for the jury to find Petitioner guilty of carjacking a third time; that would

1   have constituted finding Petitioner guilty for carjacking the car from Morris twice.
2   Instead, Petitioner's acts against Morris constituted both carjacking and robbery.

3   Indeed, when the jury found Petitioner guilty of robbery against Patton and
4   carjacking against Morris it necessarily found him guilty of robbery against Morris.
5   As the prosecutor pointed out, there are only two differences between carjacking
6   and robbery.  (5RT 1917.)  Robbery is of any property, not just a car, and it requires
7   intent to permanently deprive, not just temporarily.  (CALCRIM Nos. 1600, 1650;
8   CT 141-144.)  If the jury found Petitioner guilty of robbery against Patton, it
9   necessarily found that Petitioner intended to permanently deprive the sisters of the
10  car.  Therefore, once the jury found Petitioner guilty of carjacking against Morris, it
11  necessarily found him guilty of robbery against her, as well.

12  The California Court of Appeal acted reasonably in finding that the third
13  carjacking conviction in Count 2 was a clerical error.  The Court of Appeal stated,
14  "We have no difficulty in determining the jury intended to find defendant guilty of
15  second degree robbery of Morris as charged in count 2.  This case was tried from
16  start to finish with the understanding defendant was charged with two counts of
17  carjacking and two counts of second degree robbery."  (LD 6 at 4.)  The Court of
18  Appeal's finding of clerical error is binding in this Court absent a finding that it
19  was unreasonable in light of the evidence presented in the record.  28 U.S.C. §
20  2254(d)(2); *Taylor*, 366 F.3d at 1000-01; *Lambert*, 393 F.3d at 972.

21  This case is analogous to *Stauffer*, *Howard* and *Bedford*, cited above.  In
22  *Stauffer*, the jury verdict form convicted the defendant of extortion committed in
23  Hawaii and acquitted him of extortion committed in Nevada.  Post-verdict
24  interviews revealed that the jurors had made a clerical mistake and had intended to
25  convict of the Nevada extortion and acquit of the Hawaii extortion.  At a post-trial
26  hearing, the federal district court corrected the verdict form accordingly.  *Stauffer*,
27  922 F.3d at 511.  On appeal, the defendant argued that by correcting the verdict
28  form to read guilty as to the Nevada extortion, the trial court violated his right

13

against double jeopardy. *Id.* at 513. The Ninth Circuit found abundant case law supporting the correction of judgments to reflect the intent of the jurors. The Ninth Circuit cited to Rule 36 of the Federal Rules of Criminal Procedure for the proposition that a court has the authority correct clerical errors, and found that the rule was not unconstitutional as applied because "no possible unfairness can be found in a judgment that reflects the jury's true intent." *Id.* at 514.

In *Howard*, the jury verdict form convicted the defendant of a Hobbs Act violation. The federal district court concluded that the jury intended to convict the defendant of a Federal Bank Robbery Act violation and corrected the verdict form accordingly. On appeal, the Ninth Circuit held that the trial court did not abuse its discretion in correcting the verdict form to reflect the jury's true intent. *Howard*, 278 Fed. Appx. at 778.

In *Bedford* (cited by the Ninth Circuit in *Howard*, 278 Fed. Appx. at 778), the jury verdict form convicted the defendant of "Possession of a Dangerous Weapon during the commission of a crime of violence," even though the information had charged him with unlawful possession of "a firearm . . . during the commission of crimes of violence." *Bedford*, 671 F.2d at 762. The verdict forms were read into open court, but the defense counsel did not object or call the discrepancy to the court's attention. *Id.* On appeal, the defendant argued that because he was charged with possession of a firearm, not possession of a dangerous weapon (a different statute under Virgin Islands law), he had no warning of the offense he was convicted of and could not prepare his defense accordingly. *Id.* at 762-63. The Third Circuit held that the defendant had ample warning of the charge of possession of a firearm because it was charged correctly in the information, argued by the prosecutor, and instructed upon again by the court prior to jury deliberations. *Id.* at 763. Thus, the Third Circuit found that the error was clerical in nature, could have been corrected at any time by the district court under Rule 36 of the Federal Rules of Criminal Procedure, and was therefore harmless. *Id.* at 764.

14

1      Although the trial court here did not explicitly amend the jury verdict forms,

2   by recording the convictions in its minute order and in the abstract of judgment as

3   two counts of robbery and two counts of carjacking it implicitly corrected the

4   clerical error in the jury verdict form.  (*See* CT 164-65, 195.)  As in *Stauffer*,

5   *Howard*, and *Bedford*, there was nothing unconstitutional about the Court of

6   Appeal's finding that the error in the jury verdict form was of a clerical nature and

7   susceptible to correction by the trial court in its judgment order.  *Stauffer*, 922 F.3d

8   at 511; *Howard*, 278 Fed. Appx. at 778; *Bedford*, 671 F.2d at 764.  *Bedford*

9   specifically held that when an error is clerical in nature, it is by nature harmless.

10  *Bedford*, 671 F.2d at 764.  Here, where the Court of Appeal reasonably found that

11  the jury's intent was clear, the trial court properly corrected the verdict.  As such,

12  Petitioner was not actually convicted of two counts of carjacking against the same

13  victim and no double jeopardy problem arises.

14      As to Petitioner's due process claim, *Bedford* made clear that where, as here,

15  the information charged Petitioner properly (*see* CT 67), and the trial was

16  conducted with the clear understanding that Petitioner was being tried for the

17  crimes as charged, a clerical error in the jury verdict form does not retroactively

18  cause Petitioner to have been convicted of crimes he was not charged with or

19  prevent him from defending himself.  *See Bedford*, 671 F.2d at 762-64.  As such,

20  Petitioner was properly tried and convicted of robbery against Morris, in addition to

21  carjacking.

22      Thus, there was no double jeopardy or due process violation relating to

23  Petitioner's conviction for robbery in Count 2, and the California court's rejection

24  of this claim was not unreasonable determination of the facts.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Accordingly, Respondent requests this Court deny the Petition for Writ of Habeas Corpus.

Dated:  December 7, 2009                    Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
PAMELA C. HAMANAKA
Senior Assistant Attorney General
SARA J. FARHAT
Deputy Attorney General


/s/ David Zarmi
DAVID ZARMI
Deputy Attorney General
*Attorneys for Respondent*

LA2009507522
60499440.doc

## CERTIFICATE OF SERVICE

Case Name:   **Camacho v. Dela Rosa**          No.   **CV 09-05527 RSWL(RZ)**

I hereby certify that on <u>December 11, 2009</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>December 11, 2009</u>, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Camacho Ramon
CDC G-26020
D - 8 - 109
415 U.S. Highway 49 North
Tutwiler, MS 38963

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 11 2009</u>, at Los Angeles, California.

_____                _____
Mary Emami                                              Signature
Declarant

60499478.doc
LA2009507522